**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

| | |
|---|---|
| CYNTHIA GARZA MUNDY, § | |
|    Plaintiff, § | |
| § | |
| v. § | Case No. 1:18-cv-172 |
| § | |
| NANCY BERRYHILL, COMMISSIONER, § | |
| SOCIAL SECURITY ADMINISTRATION, § | |
|    Defendant. § | |

**MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION**

The Court is in receipt of Plaintiff Cynthia Garza Mundy's Motion for Summary Judgment (hereinafter, Garza Mundy's "Motion" or "Motion for Summary Judgment"), and Defendant Nancy Berryhill's Response.  Dkt. Nos. 15, 16.  For the reasons provided below, it is recommended that the Court **DENY** Garza Mundy's Motion, and **AFFIRM** Commissioner Berryhill's final decision in Garza Mundy's underlying administrative action.

**I. Jurisdiction**

Garza Mundy seeks judicial review of Commissioner Berryhill's final decision, which denied Garza Mundy's application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (hereinafter, the "Act").  *See* Dkt. No. 1 at 2; Dkt. No. 15 at 1. The Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II. Background

Ms. Garza Mundy protectively filed applications for DIB and SSI on June 4, 2015. Dkt. 15 at 1.[1] Garza Mundy claimed that her disability began on May 29, 2015. TR at 49-51, 492. She stated that she was disabled due to various impairments: lupus, obstructive sleep apnea, obesity, right knee arthritis, generalized anxiety disorder, bipolar disorder, polyarthritis, dorsalgia, general osteoarthritis, calcific tendinosis of the left shoulder and degenerative changes, major depressive disorder, and migraine headaches. *Id.* at 52. The Social Security Administration ("SSA") denied her claim initially on September 16, 2015 and upon reconsideration on October 27, 2015. *Id.* at 49. Garza Mundy later filed a written request for a hearing on November 3, 2015. *Id.* at 49.

Based on Garza Mundy's request for a hearing, Administrative Law Judge ("ALJ") Jessica Hodgson conducted a *de novo* administrative hearing on August 15, 2017. *Id.* at 49, 261-317, 449. Garza Mundy was represented by an attorney, John R. Heard, at the hearing. *Id.* at 49. Garza Mundy testified at the hearing, along with a vocational expert. *Id.* at 49, 57. The ALJ issued her decision denying benefits on October 27, 2017. *Id.* at 1, 46. The ALJ determined that Garza Mundy had not been disabled between May 29, 2015 and the date of her decision (hereinafter, the "relevant period"). *Id.* at 50. Garza Mundy appealed to the Appeals Council, whereby she

---

[1] Counsel for Berryhill has filed a certified electronic copy of the transcript of the underlying record in this case. *See* Dkt. No. 11 through Dkt. No. 11-17. The Court will refer to the transcript with the abbreviation "TR." The transcript indicates that Garza Mundy filed for SSI and DIB on June 4, 2015. TR at 49, 61, 428.

submitted new evidence. TR at 1.[2] The Appeals Council denied Garza Mundy's request for review on September 8, 2018. *Id.* at 1-4. The Appeals Council's denial made the ALJ's decision final. TR at 1. Garza Mundy timely filed her instant Complaint on October 26, 2018. Dkt. No 1 at 4-5; *see also* TR at 2, 3 (notifying Garza Mundy that her civil complaint must be filed within 60 days of receiving the Appeals Council's letter dated September 8, 2018). On January 7, 2019, Berryhill filed her Answer to Garza Mundy's Complaint, along with a certified copy of the transcript of the underlying record in this case. *See* Dkt. No. 10 and Dkt. No. 11 through Dkt. No. 11-17. Garza Mundy filed her Motion for Summary Judgment on February 8, 2019. Dkt. No. 14, 15. Berryhill filed her Response on March 8, 2019. Dkt. No. 16.

### III. Standard of Review

Provided a district court allows the parties to present their arguments, and enters judgment based solely on the pleadings and the record, the court may review the Commissioner's final decision and enter summary judgment pursuant to FED. R. CIVIL. P. 56. *See* 42 U.S.C. § 405(g); *Flores v. Heckler*, 755 F.2d 401, 403 (5th Cir. 1985); *Lovett v. Schweiker*, 667 F.2d 1, 2 (5th Cir. 1981). Federal court review of the Commissioner's final decision to deny benefits under 42 U.S.C. § 405(g) is limited to two inquiries: (1) whether the proper legal standards were used in evaluating the evidence; and (2) whether there is substantial evidence in the record as a whole to support the decision that the claimant is not disabled as defined by the Act. *Copeland*

---

[2] The evidence Garza Mundy submitted related to a period after the ALJ's opinion. *See* TR at 2.

*v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999).

Substantial evidence is relevant evidence that a reasonable mind would accept as sufficient to support a conclusion. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). It is more than a scintilla but less than a preponderance. *Id*. A no-substantial-evidence finding is appropriate only when no credible evidentiary choices or medical findings exist to support the decision. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). If the findings of the Commissioner are supported by substantial evidence in the record, the findings are conclusive and must be affirmed. *Brown*, 192 F.3d at 496. Under this standard of review, the court must scrutinize the record to determine if such evidence is present. *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988) (per curiam); *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985) ("This standard of review is not a rubber stamp for the Secretary's decision and involves more than a search for evidence supporting the Secretary's findings.").

Evidentiary conflicts are for the Commissioner, not the courts, to resolve. *Brown*, 192 F.3d at 496. A court may not reweigh the evidence, try the issues de novo, or substitute its own judgment for that of the Commissioner. *Id*. This is true even when the weight of the evidence does not support the Commissioner's decision. *Id*. (citing *Johnson v. Bowen*, 864 F.2d 340, 343). The court's task is deferential judicial review of the Commissioner's disability decision, but not so deferential as to result in meaningless review. *Id*. When determining if substantial evidence supports the Commissioner's determination, the court must weigh: (1) the objective medical facts,

(2) the diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work history. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995); *Connie G. v. Berryhill*, No. 3:17-CV-03342-M (BT), 2019 WL 1294441, at *2 (N.D. Tex. Mar. 21, 2019) (same).

### IV. Establishing Disability

A claimant is not entitled to benefits under Titles II and XVI unless they qualify as disabled, as that term is defined by the Act. 42 U.S.C. § 423(d)(1)(A); *Heckler v. Campell*, 461 U.S. 458, 459-61 (1983). The Act defines disability the same way under both Titles, and the implementing regulations governing DIB and SSI are substantially identical. *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (same).[3] Under the Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). A sequential five-step process is used to determine whether a claimant qualifies as disabled. *See* 20 C.F.R. § 404.1520(a)(4), § 416.920(a)(4).

---

[3] Because the implementing regulations governing DIB and SSI are substantially identical, the Court will cite to the regulations interchangeably. *See Barnhart v. Thomas*, 540 U.S. 20, 24 ("For simplicity sake, we will refer only to the II provisions, but our analysis applies equally to Title XVI.").

At steps one through four, claimants bear the burden of proving that: (1) they have not engaged in substantial gainful activity during the relevant period; (2) they have one or more severe impairments; (3) their impairment(s) qualify as either a listed impairment in the appendix to the regulations, or equivalent to a listed impairment; and, (4) if they do not have an impairment or combination of impairments qualifying as a listed impairment or its equivalent, the impairment or combination of impairments they do have still gives them a residual functioning capacity that prevents them from performing past relevant work.  20 C.F.R. § 404.1520(a)(4)(i)-(iv); *Leggett v. Chater*, 67 F.3d 558, 564 n.2 (5th Cir. 1995) (same).[4] Once the claimants meet their burden at steps one through four, the burden shifts to the Commissioner at step five to establish that the claimants can perform substantial gainful employment available in the national economy.  *Greenspan v. Shalala*, 38 F.3d 232, 236-37 (5th Cir. 1994).  The burden then shifts back to the claimant to rebut this finding.  *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).  A determination at any step that the claimant is or is not disabled ends the inquiry.  *Leggett*, 67 F.3d at 564.

---

[4] The regulations refer to the assessment of disability as a sequential five-step process. *See* 20 C.F.R. § 404.1520(a)(4), § 416.920(a)(4).  However, the process might be more accurately described as a six-step process because the Commissioner must determine a claimant's residual functioning capacity after step three, but before step four.  *See* 20 C.F.R. § 404.1520(e) ("Before we go from step three to step four, we assess your residual functional capacity."); *Kneeland v. Berryhill*, 850 F.3d 749, 754 (5th Cir. 2017) (same); *West v. Colvin*, No. W-14-CA-294, 2016 WL 11581019, at *5 (W.D. Tex. May 18, 2016) ("The ALJ determines a plaintiff's RFC after step three and before step four of the sequential evaluation process.") *report and recommendation adopted sub nom. West v. Colvin*, No. CV W-14-CA-294, 2016 WL 11581020 (W.D. Tex. June 8, 2016).

## V. Discussion

Garza Mundy in her applications for SSI and DIB benefits stated that she is disabled due to various impairments, which the ALJ determined were "severe" and found support for the following: lupus, obstructive sleep apnea, obesity, right knee arthritis, generalized anxiety disorder, bipolar disorder, polyarthritis, dorsalgia general osteoarthritis, calcific tendinosis of the left shoulder and degenerative changes, major depressive disorder, and migraine headaches. TR at 52. In her Motion for Summary Judgment, Garza Mundy raises two grounds for relief arguing that the ALJ: (1) erred in dismissing medical opinion regarding her physical and mental impairments; and (2) failed to consider work history as a factor to support the credibility of her claims. Dkt. No. 15 at 1, 4, 17, 26. Berryhill disputes these allegations and states that the ALJ decision must be affirmed because it comports with the regulations and is supported by the record. Dkt. No. 16 at 7-9.

### A. The ALJ's Decision

At step one, the ALJ found that Garza Mundy had not engaged in substantial gainful employment since May 29, 2015. TR at 51. At step two, the ALJ found that Garza Mundy had the following severe impairments: lupus, obstructive sleep apnea, obesity, right knee arthritis, generalized anxiety disorder, bipolar disorder, polyarthritis, dorsalgia, general osteoarthritis, calcific tendinosis of the left shoulder and degenerative changes, major depressive disorder, and migraine headaches. *Id.* at 52. At step three, the ALJ found that Garza Mundy's impairments failed to meet

or equal a listed impairment for presumptive disability under the regulations. *Id.* Specifically, the ALJ determined that there was insufficient evidence to support the allegation of worsening symptoms, medical treatment remained unchanged despite alleged severity, any symptom flares stemmed from situational stressors, and mental impairments did not rise to the level of an extreme limitation. *Id.* at 52-54. As a result, the ALJ found that Garza Mundy's claims concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the evidence in the record. *Id.* at 55.

Before moving to step four, the ALJ found that Garza Mundy had the residual functional capacity (RFC) to perform sedentary work, as defined in 20 C.F.R. § 404.1567(a) and § 416.967(a), with some exceptions. TR at 54. The ALJ found that Garza Mundy could perform sedentary work, except that:

1. She could occasionally lift and carry 10 pounds;
2. She could sit for 6 hours in an 8-hour workday with alternations between sitting and standing for 5 minutes every 30 minutes;
3. She could walk 2 hours in an 8-hour workday with alternations between sitting for 5 minutes every 30 minutes of walking;
4. She could occasionally climb ramps and stairs;
5. She could never climb ladders, ropes, or scaffolds;
6. She could occasionally balance, stop, and crouch;
7. She could never kneel and crawl;
8. She is limited to simple, routine, repetitive tasks but not assembly work.

> 9. She is limited to simple work-related decisions
>
> 10. She could occasionally respond appropriately to co-workers.

*Id.* at 54-55 (original formatting omitted).

At step four, the ALJ found that Garza Mundy could not perform her past relevant work. TR at 60. At step five, considering Garza Mundy's age, education, work experience, and RFC, the ALJ found that Garza Mundy could perform other sedentary work existing in significant numbers in the national economy. *Id.* at 60-61. Specifically, the ALJ found that Garza Mundy could work as a call-out operator, telephone information clerk, and credit card interviewer. *Id.* at 61.

**B.  Whether the ALJ Properly Applied the Applicable Legal Standards to the Medical Opinions of Drs. Sanusi and Salvatore**

In her first claim, Garza Mundy alleges that the ALJ did not properly assess the evidence submitted by Garza Mundy and her medical providers. Dkt. No. 15 at 7, 18. According to Garza Mundy, her medical providers found greater limitations than what the ALJ determined to meet her burden of proof to demonstrate disability. *Id.* Garza Mundy further alleges that the ALJ improperly placed "little weight" to the medical opinions of Drs. Sanusi and Salvatore despite evidence to the contrary and preference given to treating source opinions. *Id.* at 8-9, 20-21. However, these contentions are without merit.

A court cannot reweigh the medical evidence. *Legget v. Chatter*, 67 F.3d 558, 567 (5th Cir. 1995). It is the role of the Commissioner, not the courts, to resolve any conflicts in evidence. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). Judicial

review of the Commissioner's findings is limited to two inquiries: (1) whether the decision comports with the proper legal standards; and (2) whether substantial evidence in the record supports the decision. *Morgan v. Colvin*, 803 F.3d 773, 776 (5th Cir. 2015); *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014).

When evaluating opinions of medical experts, the Commissioner generally gives more weight to physicians who examined a petitioner as opposed to those who have not. 20 C.F.R. § 404.1527(c)(1). Likewise, the Commissioner gives even more weight to opinions from treating physicians because those medical professionals are likely able to provide a detailed description of medical impairments and bring a unique perspective to the medical evidence. 20 C.F.R. § 404.1527(c)(2). The Commissioner gives a treating physician's opinion controlling weight if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and consistent with other substantial evidence in the record. *Id.* Furthermore, the Commissioner gives additional weight to better detailed and reasoned medical opinions. 20 C.F.R. § 404.1527(c)(3). An ALJ need not accept opinions from medical providers that are administrative findings dispositive of a case. 20 C.F.R. § 404.1527(d). For example, an ALJ may disregard opinions as to: (1) whether a claimant is disabled; (2) the nature and severity of a claimant's impairment(s); and (3) whether the claimant's impairment(s) meet the list of impairments under 20 C.F.R. § 404.1527. *Id.* The ALJ is responsible for making findings of fact and conclusions of law when reviewing the record. 20 C.F.R. § 404.1527(e)(2). Further,

the ALJ is not bound by the opinions of a psychological consultant. 20 C.F.R. § 404.1527(e)(2)(i).

The ALJ has the sole responsibility to determine disability even when the treating physician's opinion is given controlling weight. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cit. 2000). As such, a treating physician's opinion is "not conclusive." *Id.* Instead, the treating physician's opinion may be given little or no weight whenever good cause is shown. *Id.* at 455-56. Good cause exists where: (1) a physician's evidence is conclusory; (2) the opinion is unsupported by medically acceptable clinical, laboratory, or other diagnostic techniques; or (3) the opinion is otherwise unsupported by the evidence. *Id.* at 456. The Commissioner may reject a treating physician's opinion in the absence of reliable, controverting medical evidence form another treating or examining physician. *Id.* at 453. However, the Commissioner must then perform a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2). *Id.* To reverse the Commissioner's opinion, then, the petitioner must show prejudice. *Id.* at 458. Prejudice can be shown when additional evidence would have been produced if the ALJ had fully developed the record, and that additional evidence would have led to a different decision. *Id.* at 458.

The treating physician's opinion that an applicant is "disabled" or "unable to work" carries no special significance because these determinations result in legal conclusions that are reserved to the Commissioner. *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 20013); *see also* 20 C.F.R. § 404.1527(d). Similarly, the ALJ has the

discretion to determine the disabling nature of a claimant's pain. *See Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001). When a physician's opinion is one that is reserved for the Commissioner, an ALJ is not required to consider the relevant factors in evaluating medical opinions. *See Frank*, 326 F.3d at 620.

### 1. *Dr. Oladayo A. Sanusi*

According to the medical opinion dated June 16, 2015, Dr. Sanusi explained that Garza Mundy suffers from lupus, arthritis, and asthma that allows her to sit for no more than two and half hours and stand for no more than fifteen minutes. TR at 806-808.[5] As a result, Dr. Sanusi found that Garza Mundy would have to take breaks every two hours, would be limited while performing repetitive tasks during lupus flare ups, and that her symptoms would produce "good" and "bad" days. *Id.* Dr. Sanusi concluded that Garza Mundy would most likely be absent from work more than twice a month due to her impairments or treatment. *Id.* at 808. In another opinion dated November 14, 2015, Dr. Sanusi found that Garza Mundy suffers from neuropathy and cannot sit or stand for more than ten minutes. *Id.* at 790. Moreover, Dr. Sanusi also found that Garza Mundy cannot use her hands and fingers to perform repetitive tasks throughout the day. *Id.* On September 9, 2016, Dr. Sanusi found that Garza Mundy suffers from degenerative joint disease, osteoarthritis, fibromyalgia, and lupus as permanent impairments. *Id.* at 1076. As such, she cannot sit, stand, walk, climb, kneel, bend, lift, or perform other activities. TR at 1077. In

---

[5] The transcript provided in the record contains medical documentation that is beyond the relevant period from the date which the claimant claims disability up to the ALJ's final decision (May 29, 2015 until October 27, 2017). As a result, the Court cannot consider medical evidence beyond the relevant period. The claimant must file a new claim specifying that she is disabled beyond October 27, 2017.

contrast, Dr. Sanusi examined Garza Mundy on May 27, 2017, and found that she can sit for forty-five minutes and stand for fifteen minutes, but that she has no ability to perform repetitive tasks with her hands and fingers. *Id.* at 1093. Moreover, Dr. Sanusi did not find that Garza Mundy would have "good" and "bad" days, and her impairments would not require taking breaks during work or create absences from work. *Id.* at 1094.

The ALJ gave Dr. Sanusi's opinion little weight, finding that the opinion was inconsistent with the evidence in the record as a whole. TR at 57. For example, Dr. Sanusi noted that Garza Mundy is very limited in performing various activities such as sitting, standing, walking, and working, yet his later reports provide that Garza Mundy can drive, shower, and walk without assistance. *Id.* The ALJ also noted that Dr. Sanusi is a kidney specialist, and that Garza Mundy never saw a specialist for her lupus or other impairments. *Id.* As a result, the ALJ found that Dr. Sanusi's opinion was inconsistent with his own treatment records. *Id.* at 57-58. Specifically, Dr. Sanusi concluded that Garza Mundy has difficulty walking, but no neurological damage was detected; a physical examination revealed clear lungs, no edema in the exterminates, normal motor strength, and intact sensory functions. *Id.* Moreover, despite Dr. Sanusi's emphasis that Garza Mundy has severe impairments and limited range of motion, Dr. Sanusi never referred Garza Mundy to a specialist and only administered injections. TR at 57-58; *see Johnson v. Sullivan*, 894 F.2d 683, 686 (5th Cir. 1990) (finding that pain alleviated by medication is not disabling); *Bergman v. Berryhill*, 2018 WL 588349 *5 (S.D.Tex. Jan. 29, 2018) ("An impairment that can be

reasonably remedied by medication or treatment is not disabling and does not affect RFC."); *Durham v. Colvin*, 2015 WL 9305627 *6 (C.D.Cal. Dec. 21, 2015) ("An ALJ may reject the opinion of a treating physician who prescribed conservative treatment, yet opines that a claimant suffers disabling conditions."). This undermines the assertion that Garza Mundy has worsening symptoms, since there is evidence to the contrary and later medical opinions by Dr. Sanusi provide that Garza Mundy has the capacity to perform motor functions. *Id.* at 58; *see Perez v. Barnhart*, 415 F.3d 457, 461 (explaining that if the ALJ reasonably interprets the medical evidence in the record, the ALJ's finding should be upheld). Therefore, the ALJ's findings should be upheld as each one is supported by substantial evidence in the record and based on the application of proper legal standards.

### 2. *Dr. Kathleen Salvatore*

The ALJ also gave little weight to Dr. Salvatore's opinion because it was unsupported by objective medical evidence. TR at 59. On October 7, 2015, Dr. Salvatore reported that Garza Mundy has poor or no capacity to perform the following:

    1.    Maintain attention for two hours;

    2.    Maintain regular attendance;

    3.    Work in coordination with or proximity to others;

    4.    Make simple work-related decisions;

    5.    Complete a normal workday;

    6.    Perform at a consistent pace without an unreasonable number and length of rest periods;

    7.    Deal with normal work stress;

    8.    Understand and remember detailed instructions;

    9.    Carry out detailed instructions;

    10.    Dealing with stress of skilled work.

*Id.* at 777-78 (original formatting omitted).

Dr. Salvatore further indicated that Garza Mundy has a poor prognosis and suffered from bipolar II disorder, depression, and generalized anxiety disorder. *Id.* Dr. Salvatore further determined that Garza Mundy's mental state is "highly compromised by her physical state" and currently "non-functioning." *Id.* at 778. As a result, in Dr. Salvatore's opinion, Garza Mundy would likely miss work more than twice a month. *Id.*

However, the ALJ gave little weight to Dr. Salvatore's medical opinion because it was "vague and not placed in work related terms or limitations." TR at 59. Specifically, the ALJ noted that Garza Mundy's mental state appeared to be normal, and medications were prescribed and adjusted accordingly, where any decline in mental status was attributed to life stressor events. *Id.* The ALJ emphasized that Garza Mundy's symptoms would "wax and wane," which did not prevent Garza Mundy from driving, handling finances, shopping, attending church, and other daily activities. *Id.*

The ALJ is responsible for reviewing the record, then making findings of fact and conclusions of law. 20 C.F.R. § 404.1527(e)(2). Further, the ALJ is not bound by a psychological consultant's opinions. 20 C.F.R. § 404.1527(e)(2)(i). A doctor's opinion or determination that an applicant is "disabled" or "unable to work" are of no special significance because these findings are reserved to the Commissioner. *See Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003). Thus, the Court finds that the ALJ comported with the proper legal standards, and her findings should be upheld; they are supported by substantial evidence in the record.

C. **Whether the ALJ Erred on Credibility Due to Giving Little Weight to Medical Opinions and Not Considering Plaintiff's Work History**

In her second claim, Garza Mundy asserts that the ALJ was required to consider her work history to find her disability as credible. Dkt. No. 15 at 26. Specifically, Garza Mundy points out that courts have reasoned that a rational person would not forgo the potential of higher earnings and a productive career in exchange for receiving disability benefits. *Id.* Thus, Garza Mundy states that the ALJ's failure to consider her "lengthy and consistent work history" amounts to an error in assessing credibility that requires reversal of the Commissioner's final decision. *Id.* at 29.

A claimant's work history is one factor to consider when evaluating a plaintiff's symptoms. 20 C.F.R. § 404.1529(c)(3); 20 C.F.R. § 416.929(c)(3); *see McGee v. Astrue*, 2012 WL 7456174 *8 (W.D.La. Nov. 26, 2012) ("According to 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3), a claimant's work history is but one factor to consider when evaluating plaintiff's symptoms. Additionally, the Fifth Circuit has not

adopted the rule of law cited by plaintiff and espoused in the Second and Third Circuits."). The ALJ has the discretion to determine credibility and weigh testimony. *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 2000). Thus, the ALJ is "not required to mechanically follow every guiding regulatory factor in articulating reasons for denying or weighing credibility." *Giles v. Astrue*, 433 Fed.Appx 241, 249 n.30 (5th Cir. 2011); *Clary v. Barnhart*, 214 Fed.Appx. 479, 482 (5th Cir. 2007). The ALJ's determination of credibility is entitled to deference provided that the decision is supported by substantial evidence. *See Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000); *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990). Furthermore, it is not reversible error when the ALJ fails to consider plaintiff's work history to determine credibility. *See Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994). Any failure to consider work history as a factor constitutes harmless error. *See Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003).

In this case, the ALJ considered other factors besides work history to determine whether Garza Mundy was disabled. TR at 60-61. Moreover, work history is not a determinative factor, instead the ALJ is given discretion to determine credibility based on the record. Therefore, Garza Mundy's claims should be dismissed because the ALJ applied the proper standard, and her decision is supported by substantial evidence in the record.

## VI.  Recommendation

For the foregoing reasons, the undersigned recommends that the Court **DENY** Garza Mundy's Motion (Dkt. No. 15) and **AFFIRM** Commissioner Berryhill's final decision in Garza Mundy's underlying administrative action.

## VII.  Notice to Parties

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996).

SIGNED on this 12th day of September, 2019.

_____
**Ignacio Torteya, III**
**United States Magistrate Judge**